
## NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JERRY ENRIQUE WATKINS,<br>　　　　　　　Debtor. | BAP No.  EC-22-1245-GLS<br><br>Bk. No. 22-20925-A-12 |
| JERRY ENRIQUE WATKINS,<br>　　　　　　　Appellant,<br>v.<br>U.S. BANK NATIONAL ASSOCIATION;<br>NEWRES, c/o PHH Mortgage Service;<br>FRANCHISE TAX BOARD, c/o Anthony<br>Franklin; INTERNAL REVENUE<br>SERVICE, c/o Mary Sevilla; MICHAEL<br>MEYER, Chapter 12 Trustee,<br>　　　　　　　Appellees. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Fredrick E. Clement, Chief Bankruptcy Judge, Presiding

Before: GAN, LAFFERTY, and SPRAKER, Bankruptcy Judges.

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Chapter 12[1] debtor Jerry Enrique Watkins ("Debtor") appeals the bankruptcy court's order dismissing his case and imposing a three-year bar to refiling under § 349(a). Debtor filed a total of seven chapter 12 cases between 2009 and 2022. He confirmed a plan in three of those cases but defaulted under the terms of each confirmed plan.

In the present case, Debtor proposed to pay creditors in full through a lump sum payment from proceeds of a new loan secured by his farm property. The proposed loan was insufficient to pay the asserted secured claim of creditor U.S. Bank N.A. ("US Bank"). Debtor objected to US Bank's claim, but only disputed $30,540 of its $2.6 million claim.

Although Debtor's claim objection was still pending, the bankruptcy court denied confirmation because Debtor's proposed loan was insufficient to pay the claims under the plan, even if US Bank's claim was reduced by the amount of Debtor's objection. The court dismissed the case and imposed a three-year bar to refiling.

Debtor argues that the court erred by dismissing the case prior to resolving his claim objection, and by imposing a refiling bar without adequate notice or a sufficient factual basis. Debtor does not demonstrate error. We AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

FACTS

**A.    Debtor's bankruptcy and the court's order to show cause**

Debtor filed his chapter 12 petition in April 2022. He listed six prior chapter 12 bankruptcy cases filed between 2009 and 2019, the last of which was dismissed by the court in March 2022. Debtor scheduled total assets of $9,827,293, including his farm, which he valued at $3,000,000. He scheduled total debts of $1,295,505, consisting primarily of US Bank's secured claim, which Debtor listed as $1,201,590.

Debtor filed a status report indicating his intent to file a plan providing for full payment to all creditors through a new "reverse mortgage" of his farm property. Debtor stated that if he was unable to obtain the loan, he would provide for alternate financing to pay creditors, including a possible sale of his farm property.

Chapter 12 trustee Michael Meyer ("Trustee") also filed a status report which outlined in detail Debtor's prior chapter 12 cases. Trustee questioned Debtor's eligibility for chapter 12 and argued that Debtor lacked sufficient income to fund a plan. Trustee stated that Debtor had admitted that the reverse mortgage would not provide adequate funds to pay creditors.

At the initial status hearing in May 2022, the court expressed its concerns about Debtor's eligibility and the fact that Debtor had been in chapter 12 for eleven of the past thirteen years without real progress toward reorganization. The court indicated that it wanted to give Debtor

one more effort to reorganize, and it issued an order to show cause ("OSC") requiring Debtor to prove chapter 12 eligibility, attend the meeting of creditors, timely file all operating reports, and timely file and confirm a chapter 12 plan. The OSC stated that if Debtor failed to perform his duties under the Bankruptcy Code, or to prove his eligibility for chapter 12, the court would dismiss the case and impose a three-year bar to refiling.

At the hearing on the OSC, the court held that Debtor satisfied the threshold issue of eligibility, and it continued the hearing.

## B.    Debtor's plan and claim objection

On June 22, 2022, loan servicer PHH Mortgage Corporation ("PHH") filed a proof of claim on behalf of US Bank evidencing a claim of $2,626,603.20, secured by Debtor's farm. Debtor thereafter filed his chapter 12 plan which provided for payment of all claims through a refinancing of the farm. The plan required Debtor to make a lump sum payment to Trustee by December 1, 2022, in an amount sufficient to satisfy all allowed claims, which Debtor estimated at $1,415,956.34. As an exhibit to the plan, Debtor attached a payoff quote provided by PHH stating a total amount due of $1,223,371.90. At Debtor's request, the bankruptcy court extended the confirmation deadline to August 29, 2022.

On August 1, 2022, US Bank filed an amended proof of claim for $2,608,154.85, including prepetition arrears of $1,461,127.91, and it filed an objection to confirmation of Debtor's plan. US Bank argued that Debtor's plan failed to properly treat its secured claim under § 1225(a)(5), did not

4

satisfy the best interests test of § 1225(a)(4), and was not feasible as required by § 1225(a)(6). Trustee also objected to confirmation and argued there was no evidence that Debtor would be able to obtain sufficient funding to make the payments required by the plan. Trustee provided a detailed history of Debtor's prior unsuccessful efforts to confirm a plan in his most recent chapter 12, which similarly provided for a lump sum payment.

In response, Debtor disputed US Bank's claim and cited the payoff quote and the proof of claim filed by US Bank in Debtor's 2019 bankruptcy case in the amount of $1,043,960.38. He concurrently filed an objection to US Bank's claim and argued it should be limited to $1,223,373.90, the amount demanded in its payoff quote.

US Bank responded to the claim objection by asserting the payoff quote—and its proof of claim in the 2019 case—were erroneously generated from its internal systems based on the confirmed plan in Debtor's 2017 case. The 2017 plan provided for a cramdown of US Bank's claim to $950,000, to be paid at 5.5% interest, but stated that US Bank would retain its secured claim for the full amount under the loan in the event of dismissal or conversion. Because Debtor's 2017 case was dismissed, US Bank argued it was entitled to the full amount of its claim under the note and deed of trust, as asserted in its amended proof of claim. In support of its response, US Bank provided documents from Debtor's

2017 case, including its proof of claim for $2,147,747.87, with supporting documentation, and Debtor's confirmed 2017 plan.

Debtor filed a reply and argued that US Bank failed to account for payments made under Debtor's first chapter 12, filed in 2009. He attached the trustee's final report and account from that case showing disbursements to the prior holder of the loan, in the total amount of $30,540.

The bankruptcy court extended the deadline for confirmation and continued the hearing to December 12, 2022. The court ordered Debtor to file further briefs and provide evidence with respect to confirmation issues raised by US Bank and Trustee, and it advised Debtor that failure to do so sufficiently could result in summary denial of confirmation. The bankruptcy court encouraged Debtor to resolve his claim objection prior to the deadline for confirmation and warned that, "given the debtor's history of filings, as time passes the likelihood of further extensions diminishes."

On November 21, 2022, the court held a hearing on Debtor's claim objection. Debtor acknowledged that the amount in dispute was only $30,540 but stated that there might be an additional $200,000 in uncredited payments. Debtor conceded the disputed amount was not enough to affect confirmation, but he requested a continuance to allow US Bank to respond to discovery requests and, if appropriate, to allow Debtor to file an amended claim objection. Debtor noted that the discovery responses were late and suggested he would consider filing a motion to compel.

The bankruptcy court continued the claim objection hearing to January 9, 2023, and informed the parties that it intended to go forward with confirmation on December 12, 2022, because the $30,540 dispute would not affect confirmation and did not form a basis for further delay. However, the court told Debtor that, if he provided strong evidence supporting an objection to additional amounts, it would consider further extending the confirmation deadline. The court advised: "the fact that [the claim objection] is unresolved will not defeat you if you can show me you've got a good chance of success and have been duly diligent in pursuing the information necessary to prosecute your claim objection."

## C.    The confirmation hearing and the court's ruling

Prior to the continued confirmation hearing, Debtor filed exhibits demonstrating his pre-approval for a loan sufficient to pay creditors $1,400,000, and documents which he asserted showed that US Bank's claim should be further reduced by $14,510.12. Debtor contended that he was continuing to obtain evidence of other payments made on the loan which were not included in US Bank's calculations.

US Bank filed the trustee's final report and account for each of Debtor's six prior bankruptcy cases which showed total payments of $67,772: (1) $30,540 disbursed in the 2009 case; and (2) $37,232 disbursed in the 2017 case. US Bank maintained that it was working to verify whether Debtor made any additional payments since 2009 but asserted it had not received from Debtor any evidence of such payments. US Bank reiterated

its objection that Debtor's plan was not feasible and did not adequately treat its claim.

At the continued confirmation hearing, Debtor admitted that his objection pertained only to $30,540 of US Bank's $2,608,154.85 claim, and his proposed refinance loan was insufficient to pay the claim. Debtor again stated that he believed another $200,000 in payments were not properly accounted for in US Bank's claim, but he could not make an offer of proof because he had not yet received evidence from his bank or discovery responses from US Bank. Debtor requested a continuance to January 9, 2023, to coincide with the claim objection hearing.

US Bank opposed a further continuance and requested denial of confirmation. Trustee agreed and argued that, even if Debtor could prove he made additional payments of $200,000, his plan was still not feasible. Trustee noted that Debtor did not modify or amend his plan, and he failed to make the lump sum payment required by it.

The bankruptcy court denied Debtor's request for a continuance and denied confirmation. The court reasoned that Debtor's objection to $30,540 of US Bank's $2.6 million claim was not significant, and Debtor's failure to obtain the loan on a final basis, or make the lump sum payment, made the plan not feasible.

Debtor agreed that dismissal was appropriate because he did not confirm the plan by the deadline, but he argued the court should impose no more than a one-year refiling bar because US Bank had a pending

foreclosure sale. US Bank and Trustee each argued for a three-year bar, given Debtor's filing history and the possibility of lengthy state court litigation.

The bankruptcy court took the matter under advisement and entered a written order, dismissing the case and imposing a three-year bar. The court reasoned the refiling bar was warranted based on Debtor's history of bankruptcy filings, his failure to act in proper prosecution of the case, and his failure to abide by the court's order to obtain confirmation by the December 12, 2022 deadline. The court held that Debtor's actions constituted egregious behavior, and Debtor unfairly manipulated the Bankruptcy Code or otherwise serially filed cases in an inequitable manner as described in *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219 (9th Cir. 1999). Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion by dismissing Debtor's chapter 12 case?

Did the bankruptcy court abuse its discretion by imposing a three-year bar to refiling?

## STANDARDS OF REVIEW

We review for abuse of discretion a bankruptcy court's decision to dismiss a case with a bar to refiling. *In re Leavitt*, 171 F.3d at 1223. A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

"The determination of bad faith or egregious conduct for purposes of dismissal with prejudice is reviewed for clear error as a mixed question of law and fact as to which facts predominate." *Duran v. Gudino (In re Duran)*, 630 B.R. 797, 807 (9th Cir. BAP 2021). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

**A.    The bankruptcy court did not abuse its discretion by dismissing the case.**

Section § 1208(c) provides that a bankruptcy court may dismiss a chapter 12 case for "cause," including ten specified examples.[2] Though not

---

[2] The non-exhaustive list of "cause" for dismissal under § 1208(c) includes:
(1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 128;
(3) failure to file a plan timely under section 1221 of this title;
(4) failure to commence making timely payments required by a confirmed plan;

10

specifically enumerated, "cause" for dismissal also includes bad faith by the debtor in filing the petition. *See In re Bootjack Dairy M&D*, Case No. 23-40226-JMM, 2023 WL 5535821, at *10 (Bankr. D. Idaho Aug. 28, 2023); *In re Olsen*, 609 B.R. 339, 348-49 (Bankr. D. Mont. 2019). Because "the Bankruptcy Code contains an implied requirement of good faith in the filing of any bankruptcy petition," *In re Borg*, 105 B.R. 56, 57 (Bankr. D. Mont. 1989), standards for determining a bad faith filing under chapters 11 or 13 are applicable to chapter 12, *In re Olsen*, 609 B.R. at 348.

"To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam). Both determinations require the court to consider the "totality of the circumstances." *Id.* Bankruptcy courts "may consider any factors which evidence an intent to abuse the judicial process and the

> (5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
> (6) material default by the debtor with respect to a term of a confirmed plan;
> (7) revocation of the order of confirmation under section 1230 of this title, and denial of confirmation of a modified plan under section 1229 of this title;
> (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan;
> (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; and
> (10) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

purposes of the reorganization provisions." *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th Cir. 2013) (cleaned up). In other words, "[t]he test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (citations omitted).

Although Debtor's long history of multiple bankruptcy cases concerned the bankruptcy court, it decided to permit Debtor one final chance to reorganize. The bankruptcy court ultimately dismissed the case because Debtor failed to comply with the OSC and confirm a plan by the deadline. Debtor admits that his plan was not confirmable, and he does not appeal the court's decision to deny confirmation. Instead, he argues that the bankruptcy court erred by dismissing the case prior to finally determining the amount of US Bank's claim.

Given the totality of circumstances, including Debtor's six prior unsuccessful chapter 12 cases, his lack of a firm funding source sufficient to pay creditors under his plan, and his lack of evidence to support a significant reduction to US Bank's claim, we find no abuse of discretion in the court's decision to dismiss the case instead of granting further extensions of the confirmation deadline.

The bankruptcy court twice extended the confirmation deadline, and it gave Debtor notice from the outset that failure to timely confirm the plan would result in dismissal. The court informed Debtor that further

12

extensions were unlikely absent a showing that his claim objection could significantly reduce US Bank's claim, or that Debtor was duly diligent in pursuing that evidence. But Debtor did not file a motion to compel US Bank's responses to his discovery requests, he did not amend his claim objection, and he did not provide any evidence, including his own bank records, showing additional payments beyond those disbursed through his prior chapter 12 cases. At the confirmation hearing, Debtor acknowledged that his claim objection was limited to the $30,540 disbursed in his 2009 case.

Although his plan was unconfirmable as proposed, Debtor did not amend his plan or provide for alternate treatment of US Bank's claim if it were allowed as asserted. And though Debtor claims he relied on the erroneous prepetition payoff quote, and was ambushed by US Bank's proof of claim, US Bank filed its initial proof of claim for $2,626,603.20 on June 22, 2022—over two weeks before Debtor filed his chapter 12 plan, and nearly six months before the confirmation hearing.

The bankruptcy court properly denied confirmation because Debtor's plan was not feasible, and Debtor did not demonstrate that a further extension would provide a reasonable likelihood of confirmation. The bankruptcy court did not abuse its discretion by dismissing the case

because the record supports a finding of "cause" based on Debtor's failure to timely confirm his plan of reorganization in accordance with the OSC.[3]

## B. The bankruptcy court did not abuse its discretion by imposing a three-year bar to refiling.

Once a bankruptcy court has determined that dismissal is appropriate, it must decide which form of dismissal should apply. *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 922 (9th Cir. BAP 2011). "Section 349(a) establishes a general rule that dismissal of a case is without prejudice but expressly grants a bankruptcy court the authority to dismiss the case with prejudice—i.e., a permanent bar to refiling." *In re Bayati*, BAP No. CC-16-1072-KiTaKu, 2016 WL 5848892, at *4 (9th Cir BAP Oct. 5, 2016) (footnote omitted) (citing *In re Leavitt*, 171 F.3d at 1223-24), *appeal dismissed*, 689 F. App'x 867 (9th Cir 2017). The statute necessarily confers judicial discretion to impose a bar of shorter duration. *Id.; see also In re Duran*, 630 B.R. at 809 ("The § 349(a) power of the court 'for cause' to 'order otherwise' necessarily confers judicial discretion to impose a wide variety of consequences of dismissal . . . .").

---

[3] Although the court based its decision on the OSC, the record also supports cause based on § 1208(c)(1), (5), and (9). Additionally, the court's finding of bad faith for purposes of imposing the refiling bar is sufficient to establish "cause" to dismiss for bad faith. *See In re Duran*, 630 B.R. at 808-10 (noting that, unlike "bad faith" for purposes of dismissal, "bad faith" for purposes of § 349(a) requires egregious conduct and stating that, "'[c]ause' to impose a condition of prejudice on a dismissal is a more rigorous concept than 'cause' to dismiss a case.").

Debtor argues that the bankruptcy court violated due process by not giving notice that it would dismiss the case with prejudice, and he argues that the court erred by imposing a three-year refiling bar.

### 1. The bankruptcy court gave adequate notice of dismissal with prejudice.

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). An alleged due process violation cannot constitute reversible error unless the party asserting the violation can demonstrate prejudice. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008), *partially abrogated on other grounds as recognized by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021).

The court gave Debtor ample warning of its intent to dismiss the case with a three-year bar. The OSC specifically referenced the possibility of a refiling bar, and the court repeatedly warned Debtor that failure to confirm the plan would result in dismissal with a refiling bar. Moreover, after Debtor conceded that dismissal was appropriate, the court afforded him an opportunity to argue against imposition of the three-year bar, and it considered Debtor's argument before issuing a written decision.

At the heart of Debtor's due process argument is confusion about whether the provision in the dismissal order that dismissal is "with

15

prejudice" operates as an additional restriction beyond the three-year bar.[4] Because § 349(a) confers judicial discretion to impose a wide variety of consequences, "[a]ppellate courts have had to discern from facts what was intended when a bankruptcy court dismisses a case 'with prejudice' without explanation." *In re Duran*, 630 B.R. at 809 (citations omitted).

Here, it is clear that the court used the phrase "with prejudice" to reference its authority under § 349(a) to impose the three-year refiling bar. At the confirmation hearing, the court informed the parties that it was considering whether a one- or three-year bar was appropriate, and the court's written order expressly imposes a three-year bar.

We find no basis to construe the court's use of the phase "with prejudice" as imposing any restriction beyond the three-year bar. A refiling bar of longer duration, including a permanent bar, would necessarily subsume the three-year bar and render it meaningless. Furthermore, neither the order, nor statements made by the court at the hearing, indicate an intent to impose any other form of restriction. *See id.* (describing the variety of restrictions which courts have imposed under "with prejudice" dismissal orders).

---

[4] The dismissal order states:
1. the case is dismissed with prejudice under 11 U.S.C. § 349(a);
2. the debtor is barred from filing another bankruptcy case for a period of 3 years commencing from the date of entry of this order.

The court satisfied due process by providing Debtor sufficient notice of its intent to dismiss with a three-year bar, and the order does exactly that.

## 2. The bankruptcy court did not err by determining that Debtor's actions constituted bad faith for purposes of § 349(a).

As the bankruptcy court correctly held, the standard for cause to dismiss with prejudice under § 349(a) is the totality of circumstances, considering the four factors outlined in *Leavitt*: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether the debtor's behavior is egregious. 171 F.3d at 1224. Because the determination involves the totality of the circumstances, not every *Leavitt* factor must be satisfied. *See Khan v. Barton (In re Khan)*, 846 F.3d 1058, 1066 (9th Cir. 2017) ("[T]he [*Leavitt*] factors are simply factors to consider . . . what matters is the totality of the circumstances." (cleaned up)). "A finding of bad faith does not require fraudulent intent by the debtor." *In re Leavitt*, 171 F.3d at 1224.

The bankruptcy court considered the *Leavitt* factors and found bad faith and egregious conduct in Debtor's failure properly to prosecute the case, failure to obtain confirmation by the court's deadline, and his history of filings and dismissals. The court noted that Debtor enjoyed the protections of the Bankruptcy Code for over eleven years during the span

of his six prior cases, while mortgage arrears increased over $1,300,000. Debtor confirmed three plans in his six cases, but defaulted on each of them, and he engaged in a pattern of failing to prosecute his proposed chapter 12 plans.

On appeal, Debtor argues that the facts cited by the court do not rise to the level of bad faith or egregious conduct, but he does not demonstrate that the court's factual findings are clearly erroneous. The bankruptcy court's findings are supported by evidence in the record and are neither illogical nor implausible. The bankruptcy court appropriately considered the *Leavitt* factors and the totality of the circumstances, and we do not substitute our judgment for that of the bankruptcy court. *See Legal Serv. Bureau, Inc. v. Orange Cnty. Bail Bonds, Inc. (In re Orange Cnty. Bail Bonds, Inc.)*, 638 B.R. 137, 149 (9th Cir. BAP 2022).

### CONCLUSION

Based on the foregoing, we AFFIRM the court's order dismissing Debtor's case and imposing a three-year bar to refiling.